UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| THOMAS D. ROGERS III and<br>VICTORIA A. ROGERS, | ) <br> ) <br> ) | CASE NO.: 2:07-cv-3998-CWH |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | **PLAINTIFFS' PETITION FOR<br>ATTORNEYS' FEES AND COSTS** |
| STEWART TITLE GUARANTY<br>COMPANY, | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) <br> ) | |

The Plaintiff's, Thomas D. Rogers III and Victoria A. Rogers, hereby petition this court for an award of Attorneys' Fees and Cost pursuant to FRCP, Rule 54(d) and *Hegler v. Gulf Ins. Co.*, 243 S.E.2d 443 (S.C. 1978).

A. **SOUTH CAROLINA RECOGNIZES A COMMON-LAW EXCEPTION TO "THE AMERICAN RULE" FOR INSURANCE COVERAGE DECLARATORY JUDGMENT ACTIONS**

Under the "American Rule," the parties to a lawsuit generally bear the responsibility of paying their own attorneys' fees. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986). The South Carolina Supreme Court and others, however, recognize numerous exceptions to this rule. *See Jackson v. Speed*, 486 S.E.2d 750, 759 (S.C. 1997). Pertinent to the case at bar, South Carolina has adopted a common-law exception to the American rule that would allow an award or attorneys' fees to a policyholder that has prevailed against its insurance company in a declaratory judgment action, even in the absence of bad faith by the insurer. *Hegler v. Gulf Ins. Co.*, 243 S.E.2d 443 (S.C. 1978). In *Hegler*, the insurer undertook the defense of claims against its insured pursuant to a reservation of rights under a policy of general automobile liability insurance, and then instituted a declaratory judgment

against the insured seeking a finding of no coverage. By forcing the insured to employ legal counsel to defend the contention by the carrier of lack of coverage, the court stated that there is "no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage." *Id.* at 444. In commenting on other jurisdictions' failure to recognize such an exception, the court reasoned that the legal fees incurred by the insured, in successfully asserting his rights against the carriers' attempt to avoid its contractual obligations, were damages arising directly as a result of the breach of the contract. "It [the insurer] guessed wrong as to its duty, and should be compelled to bear the consequences thereof." *Id.* (quoting 7A APPLEMAN, INSURANCE LAW AND PRACTICE, Section 4691, p. 512). *Hegler* remains good law in South Carolina, and has not been overruled. Plaintiffs even explicitly pled the *Hegler* case in their Complaint as an assertion of their intent to seek attorneys' fees and costs should they prevail on Stewart Title's duty to indemnify under the subject title insurance policy. *See* Compl. ¶ 30.

Interestingly, there appear to be a variety of common-law approaches to the issue, yet no particular approach dominates the landscape such to establish even a majority or minority rule. In *AcMat Corp. v. Greatet New York Mut. Ins. Co.*, 923 A.2d 697 (Conn. 2007), the Supreme Court of Connecticut set forth the various approaches of many jurisdictions. As of 2007, Arkanas, Kansas, Maryland, Montana, South Carolina, Washington, and West Virginia had adopted "various insurance exceptions to the American rule as a matter of common law, and award attorneys' fees to successful policyholders in coverage actions, irrespective of any statutory or contractual provisions." *Id.* at 703-04. (citing *Hegler*, 243 S.E.2d 443, along with cases from each jurisdiction listed above). The *AcMat* court described the South Carolina rule as one where the "successful insured may recover fees from declaratory judgment action even if the

insurer has defended underlying action pursuant to a reservation of rights." *Id.* The court went on to conclude that seven (7) other states: Alabama, California, Kentucky, Louisiana, Michigan, New Mexico and Tennessee, follow the American rule strictly and have not adopted any common law exceptions in insurance declaratory judgment actions, *id.* at 703; New York, Minnesota, and Massachusetts follow a rule which allows attorneys' fees only if the policy holder is "cast in a defensive posture," or only if the insurer has breached the duty to defend; *id.* at 705, and nine (9) states: Indiana, Iowa, Maine, Mississippi, North Carolina, Pennsylvania, Utah, Vermont and Wisconsin, have created a common-law exception only where the insurance coverage litigation is the product of bad faith on the part of the insurer. *Id.* The Connecticut Court then went on to conclude that it would follow the latter, allowing attorneys' fees only when the coverage litigation is the produce of bad faith. *Id.* at 707.

The inception of the declaratory judgment case at bar was the East Cooper Civic Club's claims against the Rogers and the real estate in a 2001 suit filed in Charleston County Court of Common Pleas. Pursuant to a reservation of rights letter, Defendant Stewart Title undertook the Rogers' defense in that matter. *See* Exhibit A (Reservation of Rights Letter dated 12/5/01). After the court concluded in February 2007 that a publicly dedicated graveyard existed on Plaintiffs' property, Plaintiffs asserted their demand that Stewart indemnify them for the full amount of the policy or $1 million US Dollars. *See* Exhibit B (Roger's Demand letter dated 4/9/07).

In addition to the South Carolina common law allowing the recovery of attorneys' fees in a matter such as this one, the Stewart Title Policy language fails to preclude the award of fees and costs in this matter, and provides the following relevant provisions:

> 4. OUR CHOICES WHEN YOU NOTIFY US OF A CLAIM
> After we receive your claim notice or in any other way learn of a matter for which we are liable, we can do one or more of the following:

a.   . . .

   f. Cancel this Policy by paying the Policy Amount, then in force, and only those costs, attorneys' fees and expenses incurred up to that time which we are obligated to pay.

This indicates that the Stewart Title Policy contemplates payment of the policy amount, cancellation of the policy, and then the payment of attorneys' fees and costs, in addition to the Policy Amount. Further, the Title Policy provides that "the Policy Amount will be reduced by all payments made under this Policy-- except for costs, attorneys' fees and expenses." Para. 6(c).

When Stewart refused to pay the Policy Amount, the Rogers filed this DJ action for coverage. By entry dated April 1, 2011, this court entered judgment against the Defendant for the full amount of the policy or $1 Million US Dollars. Here, Stewart Title "guessed wrong" as to its duty to indemnify the Rogers for their loss under the terms of the policy, and the Rogers had to incur attorneys' fees and costs in order to obtain a judgment. If Stewart had guessed correctly, then the Rogers would have received their $1Million US Dollars and would not have had to expend monies to obtain what they were otherwise due under the contract of title insurance.

B. THE REASONABLENESS OF THE FEE

Plaintiffs have submitted in support of this petition Affidavits of their counsel regarding the number of hours, detailed time records, cost records, and Affidavit of another South Carolina attorney who practices in a similar area of litigation. See Exhibits C, D, & E (Affidavits).

Once the availability of prevailing party attorneys' fees is established, the court must determine a reasonable fee. District courts in the Fourth Circuit routinely look to *Barber v. Furniture Distributors, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) or what has been termed the "Barber factors" for guidance. *See also Johnson v. City of Aiken*, 278 F.3d 333, 336 (4th Cir.

2002). When attorney's fees and costs are permissible, a federal court determines the award by first determining the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the Barber factors when making the lodestar determination. *See Robinson v. Equifax Information Servs.*, 560 F.3d 235, 243 (4th Cir. 2009).

1. <u>Time and labor required</u>

Plaintiffs have submitted detailed time listings which were made contemporaneously with said work in this matter, and affidavits of Mr. Massalon and Mrs. Allen reflect that the Plaintiffs actually paid bills reflecting the detailed listings. As set forth in the Affidavit of Christy Ford Allen, some actual time entries have been removed from the exhibits due to a portion of the bills being related to the subject cemetery, for example property tax valuation challenges, but not directly related to this litigation.

> [A]s a matter of the efficient and fair administration of the federal courts, individual scrutiny of line-item entries is neither necessary nor appropriate in contractual fee-shifting cases. Given the fact that the fees were paid by a party who had no reassurance of indemnity, we believe that market considerations normally would render unnecessary resort to the time-consuming examination of individual expenses.

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 774 (7th Cir.2010).

This DJ case was filed in December 2007. The parties conducted written discovery and depositions of several witnesses. The document discovery was rather extensive due to the necessary review and exchange of the files from the underlying graveyard case – which lasted 6 years – in state court prior to its post-trial conclusion in February 2007. Both Plaintiffs and Defendant, in this case, filed substantial motions for summary judgment, hoping to have this case decided without the necessity of a trial. The court denied both motions for summary judgment, and in February 2009 the case was tried to this court over 2 ½ days, and then another ½ day some weeks later. Below is a summary of the billed hours

and corresponding hourly rate, as set forth in detail in Exhibits C- D.

| Name | Type | Billed Hours | Rate/Hr. | Total |
|---|---|---|---|---|
| John A. Massalon | Attorney | 52.70 | 300.00 | 15,810.00 |
| Christy Ford Allen | Attorney | 210.30 | 300.00 | 63,240.00 |
| Ryan Neville | Attorney | 50.65 | 75.00 | 3,798.75 |
| Beth Tobul | Paralegal | 20.00 | 75.00 | 1,500.00 |
| **Totals:** | | **333.65** | **252.81**[1] | **$84,348.75** |

The costs or expenses incurred contain the following:

| | |
|---|---|
| Filing Fees: | $350.00 |
| Mediation: | $701.81 |
| Legal Research: | $1,897.63 |
| Court Reporters: | $2,133.85 |
| Experts: | $3,917.50 |
| Litigation Technology: | $1,028.00 |
| Photocopies | $1,315.99 |
| Postage: | $4.23 |
| Mileage | $420.35 |
| **GRAND TOTAL** | **$ 11,769.36** |

2. <u>Novelty and difficulty of questions involved</u>

This case involved difficult questions of real property law arising from the nature of the title defect – that of a newly-declared, publicly-dedicated graveyard – on the Plaintiffs' property. It required the review of multiple plats and surveys—some of which dated back to the late 1800s, and also involved the analysis and presentation of multiple real property surveys, plats, overlays of changing lot lines and conditions, and analysis of over a dozen changes in ownership.

There was very little South Carolina law on the particular policy language at issue, and that issue as applied to a cemetery declared as "publicly dedicated" over 10 years after its purchase was a rather novel factual scenario. Both parties filed substantive motions for

---
[1] Blended Average Hourly Rate

summary judgment. Plaintiffs filed a detailed motion to exclude the defendant's expert on the basis of *Daubert*. The matter was tried to this court non-jury in February 2009.

3. The skill that is required to perform the legal services properly

Title insurance coverage disputes often involve questions of both insurance law and real property law, and require a high level of legal analysis and skill.

4. The attorneys' opportunity costs in pressing the litigation

The attorneys took on a case which was already factually developed via an earlier 6-year lawsuit, and prosecuted this federal declaratory judgment case for nearly 18 months prior to it being called for trial.

5. Customary fee

Both John Massalon and Christy Allen, partners in Wills Massalon & Allen LLC, charged the Rogers $300.00 per hour. For this type of commercial litigation, she and Mr. Massalon regularly charge between $250- $325 per hour. This case was also the type of case that many attorneys would contract to handle on a 1/3 contingency fee. Often times, legal counsel and their client will agree to pay an hourly rate on the higher end of the market rates in lieu of a contingency arrangement. For example, in this case the total % of the fee sought relative to the Rogers' recovery is approximately 8.43% -- a much smaller portion than 33% . "The market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client." *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir.2007) (internal quotation marks and citation omitted). In this case, the Plaintiffs' attorneys charged, and the Plaintiffs actually paid, $300.00 for attorney time. This hourly rate is typical for this kind of complex federal civil litigation. The court should also take note that a junior attorney performed some work on this matter, Mr. Neville,

and was billed at $75.00 per hour – a rate well below the average rate for attorneys practicing in this field.

Plaintiffs have also submitted the Affidavit of George Kefalos, an attorney in the Charleston area who has practiced complex insurance litigation for over 20 years in support of the reasonableness of the hourly rate of $300.00 in this matter.

6. The contingent nature of the matter/the attorneys' expectations at the outset of the litigation

Defendants Stewart Title had denied coverage for the Rogers' alleged $2 million loss. The title insurance policy covered actual loss up to $1 million. Therefore, this was an all or nothing case – meaning if the Plaintiffs prevailed they would receive a $1 million judgment and if the Defendant prevailed, Plaintiffs would receive zero. While not a case taken on a contingency fee, the result was not certain.

7. The time limitations imposed by the client or circumstances

There were no time limitations imposed by client or circumstances

8. The award involved and the results obtained

The Fourth Circuit has noted that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir.2006) (citation omitted). *See In re Abrams & Abrams, P.A.*, 605 F.3d 238 (4th Cri. 2010) (applicable in both fee-shifting and contingency cases). Defendant Stewart Title had denied coverage for the Rogers' alleged $2 million loss. The title insurance policy had $1 million limit of coverage. Plaintiffs' counsel not only successfully proved coverage under the policy, but presented ample evidence of damages well in excess of the $1 million policy limit.

9. The experience, reputation and ability of counsel

John A. Massalon, Esq. has over 20 years of litigation experience in civil and insurance litigation. He currently serves as the President of the Charleston County Bar Association, regularly lectures on professionalism at the Charleston School of Law, is a member of the American Board of Trial Advocates, and was listed in South Carolina Super Lawyers in 2010. The attached affidavit of Mr. Massalon contains further information about his experience.

Christy Ford Allen, Esq. has over 10 years of litigation experience in civil and insurance litigation. She currently serves as the President of the South Carolina Chapter of the Federal Bar Association. The affidavit of Mrs. Allen contains further information about her experience.

The Plaintiffs have submitted the Affidavit of George Kefalos in support of their experience, reputation, and ability.

10. <u>The undesirability of the case</u>

The case was not undesirable.

11. <u>Nature and length of the professional relationship between attorney and the client</u>

The undersigned had a prior attorney-client relationship with Mr. Rogers in relation to other state court litigation.

12. <u>Attorneys' fees awarded in similar cases</u>

As there are few commercial cases which actually go to trial in South Carolina and in which the award of attorneys' fees is permissible, citation to attorneys' fees in similar cases is a challenge. "Commercial disputes litigated through trial are rare in the District of South Carolina, and awards of attorneys' fees based on contractual provisions rather than statutes are even more rare." *Palmetto Health Credit Union v. Open Solutions, Inc.*, WL 11702, * 9 (D.S.C. Jan. 04, 2011). In *Palmetto Health Credit*, for example, Judge Currie awarded the

Defendant Open Solutions attorneys' fees in the amount of $748,703.38 and costs and expenses in the amount of $108,637.82, after an approximately 15% reduction based on the lack of an attorneys' fee right under the parties' agreement on non-contractual counterclaims. In *GTR Rental, LLC v. DalCanton*, 547 F.Supp.2d 510, 524 (D.S.C.2008), the Plaintiffs received an approximate $1.5 million jury award against three different defendants, and the court subsequently issued a detailed order awarding $550,000 in attorneys' fees and $16,000 in costs. *See also Summers v. Adams*, No. 3:08-2265-CMC, 2010 WL 2179571, at *7 (D.S.C. May 26, 2010) (awarding $192,000 in attorneys' fees to plaintiff who won a permanent injunction from the court).

The fees and costs sought herein are in line with, and less than, the fee awards described in the above – cited cases.

                                                Respectfully submitted,

                                                /s/ Christy Ford Allen
                                                Christy Ford Allen
                                                John A. Massalon
                                                WILLS MASSALON & ALLEN LLC
                                                Post Office Box 859
                                                Charleston, South Carolina 29402
                                                (843) 727-1144

                                                ATTORNEYS FOR PLAINTIFFS

CHARLESTON, SC
April 13, 2011